# In the United States Court of Federal Claims

No. 12-604 C

(E-Filed:  April 10, 2013)

_____
                                                    )
CAPTAIN ROSS E. JOSLYN,              )      Motion for Judgment on the
                                                    )      Administrative Record; RCFC
                    Plaintiff,              )      52.1; Motion to Supplement the
                                                    )      Administrative Record; Disability
v.                                                  )      Retirement Pay Claim Under 10
                                                    )      U.S.C. § 1201; Wrongful
THE UNITED STATES OF AMERICA,   )      Discharge Claim Under Military
                                                    )      Pay Act, 37 U.S.C. § 204
                    Defendant.              )
_____)

Michael D.J. Eisenberg, Washington, DC, for plaintiff.

James P. Connor, Trial Attorney, with whom were Stuart F. Delery, Deputy Principal
Assistant Attorney General, Jeanne E. Davidson, Director, and Donald E. Kinner,
Assistant Director, Commercial Litigation Branch, Civil Division, United States
Department of Justice, Washington, DC, for defendant.  Wayne H. Williams, Major,
United States Army, Military Personnel Branch, Army Litigation Division, Fort Belvoir,
VA, of counsel.

## OPINION

HEWITT, Chief Judge

Captain Ross E. Joslyn (plaintiff or Captain Joslyn), a former United States Army
(Army) officer and veteran of Operation Iraqi Freedom, brings this suit "seeking judicial
review of actions by the United States Army."  See Pl.'s Compl. (Complaint or Compl.),
Docket Number (Dkt. No.) 1, ¶¶ 1, 11-12.

Captain Joslyn originally alleged four claims for relief stemming from the Army's
evaluation of his service-connected disabilities and his subsequent discharge from the
Army:  (1) a claim that the Army's determination that Captain Joslyn was fit for duty
"was not supported by substantial evidence, and . . . was judged against the wrong set of
duties," making it "arbitrary, capricious, an abuse of discretion, or otherwise contrary to
law,"  id. ¶¶ 31-33 (claim one); (2) a claim that the Army's "failure to conclude
Plaintiff's second [medical evaluation] board [(MEB)] . . . was arbitrary, capricious, an

abuse of discretion, or otherwise contrary to law," id. ¶¶ 34-35 (claim two); (3) a claim that the Army's "denial of Plaintiff's request for a medical extension so the second MEB [could] proceed was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law," id. ¶¶ 36-37 (claim three); and (4) a claim that the Army's "denials of Plaintiff's request to withdraw his resignation papers were arbitrary, capricious, an abuse of discretion, or otherwise contrary to law," id. ¶¶ 38-39 (claim four).

In the Complaint, Captain Joslyn described this case as "an action arising under" 10 U.S.C. § 1201 (2006), the Military Pay Act, 37 U.S.C. § 204 (2006), and the Administrative Procedures Act (APA), 5 U.S.C. § 706 (2006).  See Compl. ¶¶ 4-6.  More specifically, Captain Joslyn cited 10 U.S.C. § 1201 and the APA in support of claim one, see Compl. ¶¶ 32-33, the APA in support of claim two and claim three, see id. ¶¶ 35, 37, and the Military Pay Act in support of claim four, see id. ¶ 39.[1]  It is well established that this court lacks jurisdiction over APA claims.  See Martinez v. United States, 333 F.3d 1295, 1313 (Fed. Cir. 2003) (en banc) ("[T]he [United States] Court of Federal Claims lacks APA jurisdiction . . . ."); Murphy v. United States, 993 F.2d 871, 874 (Fed. Cir. 1993) ("[T]he Claims Court has no authority to invoke the APA."); see also Wopsock v. Natchees, 454 F.3d 1327, 1333 (Fed. Cir. 2006) (stating that the APA is not money mandating); Banerjee v. United States, 77 Fed. Cl. 522, 534 (2007) (same); cf. infra Part II.A (discussing this court's jurisdiction).  After the United States (defendant or the government) filed a motion arguing, among other things, that plaintiff's APA claims should be dismissed as outside the court's jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), see Def.'s Partial Mot. to Dismiss and Mot. for J. upon the Admin. R. (defendant's Motion or Def.'s Mot.), Dkt. No. 8, at 18, 20-21, plaintiff "withdr[e]w[] his claims as asserted under the [APA]," Pl.'s Opp'n to Def.'s Partial Mot. to Dismiss and J. on the Admin. R. and Cross-Mot. for J. on the Admin. R. in Pl.'s Favor (plaintiff's Motion or Pl.'s Mot.), Dkt. No. 11, at 1 n.1; see also id. (conceding that "[r]eference to the APA in the Complaint was in error" because "this Court does not have jurisdiction over APA claims, and . . . the APA is not a money-mandating statute").

---

[1] Although claim one, claim two and claim three each also cite 28 U.S.C. § 1491(b)(4) (2006), see Pl.'s Compl. (Complaint or Compl.), Docket Number (Dkt. No.) 1, ¶¶ 33, 35, 37, that provision relates to the court's bid protest jurisdiction and is not relevant to this litigation, see 28 U.S.C. § 1491(b)(1), (4) (providing that, in "an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or proposed procurement[,] . . . the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5").

The court understands plaintiff's withdrawal of his APA claims to encompass claim two and claim three,[2] which were based solely on the APA, as well as related claims for relief.  <u>Cf.</u> Compl. ¶¶ 34-35 (claim two), 36-37 (claim three), 42-43 (relief related to claim two and claim three, respectively).  The court also understands plaintiff to have withdrawn the portion of claim one that relies on the APA.  <u>Cf. id.</u> ¶ 33 (portion of claim one relying on the APA).  Accordingly, the court considers only the remaining portion of claim one and claim four, which are based respectively on the Army's finding that Captain Joslyn was fit for duty and the Army's denial of Captain Joslyn's request to withdraw his resignation.  <u>Compare id.</u> ¶¶ 31-32 (portion of claim one citing 10 U.S.C. § 1201 and alleging that the Army's "finding of fitness was not supported by substantial evidence" and "was judged against the wrong set of duties"), <u>and id.</u> ¶¶ 38-39 (claim four, citing 37 U.S.C. § 204 and alleging that the Army's denial of plaintiff's request to withdraw his resignation papers was "arbitrary, capricious, an abuse of discretion, or otherwise contrary to law and must be set aside"), <u>with</u> Pl.'s Mot. 3 (stating that the only two issues remaining are whether the Army's determination that Captain Joslyn was fit for duty was supported by substantial evidence and whether his resignation was voluntary).  Because plaintiff has withdrawn his APA claims, defendant's Motion with respect to them is now MOOT.  <u>Cf.</u> Def.'s Resp. to Pl.'s Cross-Mot. for J. on the Admin. R. and Reply in Supp. of Partial Mot. to Dismiss and Mot. for J. upon the Admin. R. (defendant's Reply or Def.'s Reply), Dkt. No. 14, at 1 n.1 (stating that because Captain Joslyn has withdrawn his APA claims, defendant's Reply does not address them).

---

[2] To the extent that Captain Ross E. Joslyn (plaintiff or Captain Joslyn) attempts to revive withdrawn claim two and claim three in his reply brief, <u>compare</u> Pl.'s Reply to Def.'s Opp'n to Pl.'s Cross-Mot. for J. on the Admin. R. in Pl.'s Favor (plaintiff's reply or Pl.'s Reply), Dkt. No. 17, at 3 (stating that certain records are relevant because they show that "the failure to refer Captain Joslyn to a second [medical evaluation board (MEB)] was arbitrary and capricious"), 5 (same), 7 (same), <u>with</u> Compl. ¶¶ 34-35 (claim two for relief, based on "Defendant's failure to conclude Plaintiff's second [MEB]"), <u>and id.</u> ¶¶ 36-37 (claim three for relief, based on "Defendant's denial of Plaintiff's request for a medical extension so the second MEB [could] proceed"), such an attempt is untimely, <u>cf.</u> United States v. Ford Motor Co., 463 F.3d 1267, 1276-77 (Fed. Cir. 2006) ("Arguments raised for the first time in a reply brief are not properly before this court."); <u>Novosteel SA v. United States</u>, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs <u>reply</u> to arguments made in the response brief--they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.").  The court, therefore, treats claim two and claim three as withdrawn and waived.  <u>Cf.</u> Corus Staal BV v. United States, 502 F.3d 1370, 1378 n.4 (Fed. Cir. 2007) ("[The plaintiff] did not raise that argument in its opening brief, however, and we therefore treat that argument as waived."); <u>Novosteel SA</u>, 284 F.3d at 1274 (stating that when an argument is raised for the first time in a reply brief, "[a]s a matter of litigation fairness and procedure," the argument must be treated as waived).

Defendant's Motion further contended that all of plaintiff's claims should be dismissed for lack of jurisdiction pursuant to Rule 12(b)(1) of the RCFC because the caption of the Complaint lists the Secretary of the Army, instead of the government, as the defendant.  Def.'s Mot. at 18-20; cf. Compl.  However, the court had already construed the Complaint as being against the government, acting through the Army, see Order of Dec. 19, 2012, Dkt. No. 9, at 1 n.1; cf. Compl. ¶ 1 (stating that plaintiff "seek[s] judicial review of actions by the United States Army"), which defendant later acknowledged, see Def.'s Reply 1 n.1.  Accordingly, defendant withdrew that portion of its Motion seeking dismissal for lack of jurisdiction.  Id.  Because defendant's Motion sought dismissal for lack of jurisdiction only on the two grounds discussed above, see Def.'s Mot. 18, one of which is now moot and the other of which defendant has withdrawn, to the extent that defendant's Motion continues to seek dismissal under Rule 12(b)(1), defendant's Motion is DENIED-IN-PART AS MOOT.

Defendant's Motion also requested that, to the extent that the court found it had jurisdiction over any of plaintiff's claims, the court enter judgment on the administrative record in favor of defendant.  Def.'s Mot. 1; accord Def.'s Reply 1 n.1 (stating that because the jurisdictional issues appeared to be resolved, "this brief will focus solely upon the parties' respective motions for judgment upon the administrative record").  Plaintiff has filed a cross-motion for judgment on the administrative record in favor of plaintiff.  Pl.'s Mot. 1.

Now before the court are plaintiff's Complaint, filed September 14, 2012; defendant's Motion, filed November 16, 2012; plaintiff's Motion, filed January 2, 2013; defendant's Reply, filed February 14, 2013; and Plaintiff's Reply to Defendant's Opposition to Plaintiff's Cross-Motion for Judgment on the Administrative Record in Plaintiff's Favor (plaintiff's Reply or Pl.'s Reply), Dkt. No. 17, filed March 4, 2013.[3] Both defendant's Motion and plaintiff's Motion were filed with corresponding appendices.  See Defendant's Appendix (defendant's Appendix or Def.'s App.), Dkt. Nos. 8-1 to 8-7, and Plaintiff's Supplemental Appendix (plaintiff's Appendix or Pl.'s App.), Dkt. Nos. 11-1 to 11-2.  The administrative record (AR), Dkt. No. 7, was filed by defendant on November 16, 2012.  Also before the court are Plaintiff's Motion to Supplement the Administrative Record (plaintiff's AR Motion or Pl.'s AR Mot.), Dkt.

---

[3] On March 4, 2013, plaintiff first filed a nearly identical document with the same title. See generally Pl.'s Reply to Def.'s Opp'n to Pl.'s Cross-Mot. for J. on the Admin. R. in Pl.'s Favor, Dkt. No. 15.  This document was not signed.  See id. at 8; cf. Rules of the United States Court of Federal Claims (RCFC) 11(a) & app. E ¶ 19 (stating signature requirements).  Plaintiff's Reply, which was filed without leave, appears to be a corrected version of the document and is signed.  See generally Pl.'s Reply (labeled "Errata" on the cover page). Because the unsigned document does not meet the court's filing requirements, cf. RCFC 11(a) & app. E ¶ 19, the court GRANTS LEAVE for the filing of plaintiff's Reply and treats it as superseding the first document filed at Docket Number 15.

No. 16, filed March 4, 2013; and Defendant's Response to Plaintiff's Motion to Supplement the Administrative Record (defendant's AR Response or Def.'s AR Resp.), Dkt. No. 18, filed March 21, 2013.

For the following reasons, plaintiff's AR Motion is GRANTED, defendant's Motion is GRANTED-IN-PART and DENIED-IN-PART AS MOOT, and plaintiff's Motion is DENIED.

I.    Background[4]

A.    The Army's Physical Disability Evaluation System

The Army's process for determining whether a soldier should be discharged by reason of medical disability is known as the Army's Physical Disability Evaluation System (Disability Evaluation System).[5]  Disability Evaluation System processing is triggered when the commander of the medical treatment facility where a soldier is receiving treatment--after determining that the soldier appears to be medically unqualified to perform his duties--refers the soldier to an MEB.  Def.'s App. DA 18 (Army Regulation (Army Reg.) 635-40 ¶ 4-9).  A Physical Evaluation Board Liaison Officer (PEB liaison) is appointed to counsel each soldier going through Disability

---

[4] As discussed in Part I.C, plaintiff filed in this court in 2008 a similar complaint against the government, based on the same facts pleaded in this case, which was dismissed for lack of jurisdiction or, in the alternative, decided in favor of the government on the administrative record.  See Joslyn v. United States (Joslyn I), 90 Fed. Cl. 161, 185-86 (2009), aff'd in part and vacated in part, 420 F. App'x 974 (Fed. Cir. 2011) (per curiam) (unpublished decision).  The court's opinion in Joslyn I provides an extensive summary of the United States Army's Physical Disability Evaluation System (Disability Evaluation System), Captain Joslyn's military career and Captain Joslyn's processing through the Disability Evaluation System.  See id. at 166-75.  This Opinion, therefore, provides a briefer overview of these topics.

The court notes that, in response to defendant's argument that the court should again reject Captain Joslyn's claims for the same reasons that it did in Joslyn I, see Def.'s Partial Mot. to Dismiss and Mot. for J. upon the Admin. R. (defendant's Motion or Def.'s Mot.), Dkt. No. 8, at 18, plaintiff requests that the court "consider this case as in the first instance" or grant "a full hearing on the merits," Pl.'s Opp'n to Def.'s Partial Mot. to Dismiss and J. on the Admin. R. and Cross-Mot. for J. on the Admin. R. in Pl.'s Favor (plaintiff's Motion or Pl.'s Mot.), Dkt. No. 11, at 2-3.  The court considers this case as in the first instance in this Opinion.

[5] The Disability Evaluation System is established by Army Regulation (Army Reg.) 635-40, a copy of which is included in Defendant's Appendix (defendant's Appendix or Def.'s App.), Dkt. Nos. 8-1 to 8-7.  See Def.'s App. DA 10 (Army Reg. 635-40 ¶ 1-1) (stating that the Disability Evaluation System is established pursuant to chapter 61 of title 10 of the United States Code, that is, 10 U.S.C. §§ 1201-1222 (2006), and pursuant to Department of Defense Directive 1332.18).

Evaluation System processing.  Id. at DA 11 (¶2-8(b)); see id. at DA 15 (¶3-8(a)) (discussing the responsibilities of the PEB liaison).

The Disability Evaluation System is three-tiered, consisting of:  (1) an MEB to determine whether a soldier meets medical retention standards, see id. at DA 18 (¶ 4-10); (2) a Physical Evaluation Board (PEB) to determine whether a soldier who does not meet medical retention standards is fit for duty and, in the event that the soldier is found not fit for duty, to determine the soldier's disability rating, see id. at DA 19 (¶ 4-13), DA 21-28 (¶¶ 4-17, 4-19); and, in certain situations, (3) additional review by the U.S. Army Physical Disability Agency (PDA), see id. at DA 35 (¶ 4-22).

More specifically, at the MEB level, tier one, a soldier's medical status and duty limitations are documented, id. at DA 18 (¶ 4-10), including through the creation of a narrative summary, which the Army regulations describe as "the heart of the disability evaluation system," id. (¶ 4-11).  The decision as to whether the soldier meets medical retention standards is made based on the criteria in chapter 3 of Army Regulation 40-501. Id. (¶ 4-10); see also Def.'s App. DA 181-88 (Army Reg. 40-501, ch. 3).  The soldier is advised of the MEB results by his PEB liaison, given an opportunity to review and sign the MEB proceedings and advised on appeals procedures should the soldier disagree with the MEB report or narrative summary.  Def.'s App. DA 19 (Army Reg. 635-40 ¶ 4-12(a)).

The PEB level, tier two, is bifurcated into informal PEB and formal PEB proceedings.  See id. at DA 28-35 (¶¶ 4-20 (describing informal PEBs), 4-21 (describing formal PEBs)).  "A Soldier is entitled to a formal hearing if requested after informal consideration by a PEB."  Id. at DA 29 (¶ 4-21(a)).  A formal PEB is normally composed of the same members as the informal PEB, but is distinguished from an informal PEB in that the formal hearing gives the requesting soldier "the opportunity to present views, testimony, and new evidence."  Id. at DA 30 (¶ 4-21(b)).

In both informal and formal proceedings, a PEB serves as "a fact-finding board," id. at DA 21 (¶ 4-17(a)), charged with making as its "first and most important determination . . . whether the Soldier is physically fit or unfit to perform the duties of the Soldier's office, grade, rank, or rating," id. at DA 23 (¶ 4-19(d)(1)).  A soldier may provide information for consideration by a PEB, including information from the soldier's unit commander, supervisor or anyone else with knowledge of the effect of the soldier's condition on his ability to perform the duties of his office, grade, rank or rating.  Id. at DA 19 (¶ 4-13(b)).  PEB decisions are guided by the criteria in paragraph 4-19 of Army Regulation 635-40 and must be based on a preponderance of the evidence.  Id. at DA 23 (¶ 4-19(a)).

A soldier is informed of informal PEB findings on DA Form 199, which lists election options, including the option to demand a formal PEB hearing.  Id. at DA 28 (¶

4-20(b)-(c)).  Formal PEB findings are also reported on DA Form 199, id. at DA 34 (¶ 4-21(r)(3)), but a soldier is provided with a separate election form after a formal PEB, DA Form 199-1, id. (¶ 4-21(s)).  To challenge the findings of a formal PEB, the soldier must send DA Form 199-1 and a letter of rebuttal, which must be received at the PEB within ten days after the soldier's receipt of the formal PEB findings.  Id. (¶ 4-21(s)(1)).  Rebuttal is warranted only if "[t]he decision of the PEB was based upon fraud, collusion, or mistake of law"; "[t]he Soldier did not receive a full and fair hearing"; or "[s]ubstantial new evidence exists and is submitted which, by due diligence, could not have been presented before disposition of the case by the PEB."  Id. (¶ 4-21(t)(1)).  The letter of rebuttal "must provide rationale in support of" the ground on which the formal PEB finding is being rebutted.  Id.

The third tier, review of PEB findings by the PDA, is required only in certain situations.  See id. at DA 35 (Army Reg. ¶ 4-22(a)) (describing situations in which PDA review is required).  PDA review is meant to ensure that:  (1) the soldier received a full and fair hearing; (2) the MEB and PEB proceedings were conducted according to governing regulations; (3) the findings and recommendations of the MEB and PEB were just, equitable, consistent with the facts and in keeping with legal and regulatory provisions; (4) due consideration was given to the facts and requests contained in any rebuttal submitted; and (5) the records of the case are accurate and complete.  Id. at DA 36 (¶ 4-22(b)).  Based upon review of the PEB proceedings, the PDA may concur with the PEB's findings and recommendations, return the case to the PEB for reconsideration or other action, issue revised findings providing for a change in disposition of the soldier, or refer the case to the Army Physical Disability Appeal Board.  Id. (¶ 4-22(c)).

B.    Captain Joslyn's Military Career and Disability Evaluation System Processing

In August of 1999, after a previous enlistment in the Army, see AR 218 (1992 enlistment contract), Captain Joslyn enrolled in the University of Texas at Arlington and joined the school's Army Reserve Officer Training Corps (ROTC) program, see AR 161-70 (ROTC contract).  In December 2001, he was commissioned as a second lieutenant in the Army, see AR 157 (commission letter), with a four-year commitment to active duty in military intelligence, AR 158 (Army orders of December 8, 2001).  Captain Joslyn subsequently deployed to Iraq, where he served from May 2003 until April 2004 in support of Operation Iraqi Freedom.  See AR 132 (officer record) (showing assignment information).  Captain Joslyn initially served as a platoon leader in Iraq, under company commander Major Matthew Weinrich (Major Weinrich).  AR 92 (memorandum from Major Weinrich).  However, at Major Weinrich's request, in November 2003 Captain Joslyn was removed from his platoon and transferred to headquarters because, according to Major Weinrich, "his performance as a leader and infantryman deteriorated as the enemy contact and combat stress increased."  Id.  After returning from Iraq, Captain Joslyn served as a military intelligence officer from June 2004 to June 2005 at Fort Hood,

Texas, where he was promoted to captain.  See AR 99-102 (officer evaluation reports for July 2004-June 2005); AR 132 (officer record).  In June 2005, he was transferred to the University of Texas at Arlington to serve as an assistant professor of military science, that is, an assistant ROTC instructor, under commander Lieutenant Colonel Scott Baker (Lt. Col. Baker).  See AR 94-98 (officer evaluation reports for June 2005-June 2007); AR 132 (officer record).

According to Major (Retired) Ricardo Diaz (Major Diaz), Commandant of Cadets at the University of Texas at Arlington, Captain Joslyn performed his duties as an assistant ROTC instructor "in an unsatisfactory manner."  AR 13-14 (commander's statement from Major Diaz).  More specifically, Major Diaz asserts that Captain Joslyn was often difficult to deal with, was overweight, required supervision, was often late for work, often lost focus and concentration, had a hard time remembering instructions and lacked attention.  Id. at 13.  According to Captain Joslyn, "on or about May 1, 2007, [his commander] Lt. Col. Scott Baker informed [him] that if he did not retire out of the military he would receive a negative Officer Evaluation Report . . . , which would be detrimental to his career."  Pl.'s Mot. 6 (internal quotation marks omitted); see also Pl.'s App. 1 (DA Form 199-1) ("My commanding officer express[ed] concern with my retainability and encouraged me to submit my resignation.").

Thereafter, on June 27, 2007, Captain Joslyn tendered his unqualified resignation from the Army, citing "Family concerns."  AR 154 (resignation).  Lt. Col. Baker recommended Captain Joslyn's honorable discharge the same day, stating that Captain Joslyn was "physically qualified for Unqualified Resignation" and that Captain Joslyn would be scheduled for a medical examination, as required by Army regulations.  AR 152 (memorandum from Lt. Col. Baker to Army human resources).  Captain Joslyn received counseling regarding his voluntary resignation, see AR 153 (statement of counseling from Lt. Col. Baker), and his separation from the Army was scheduled for May 1, 2008, AR 144-46 (human resources e-mail chain approving resignation).  Subsequently, in a memorandum dated March 10, 2008, Lt. Col. Baker stated that "over the past rating period" Captain Joslyn's performance as an assistant ROTC instructor had been "satisfactory."  AR 36 (commander's statement from Lt. Col. Baker).  But see AR 13 (commander's statement from Major Diaz) (describing Captain Joslyn's performance during the same period as "unsatisfactory").

In December 2007, as a result of examinations conducted during his out-processing, see AR 17 (formal PEB proceedings, DA Form 199) (stating that an MEB was recommended during Captain Joslyn's out-processing), Captain Joslyn entered the Disability Evaluation System, and an MEB was initiated, see AR 130 (MEB Notification of December 18, 2007) (listing diagnosis of post-traumatic stress disorder (PTSD)); AR 131 (undated MEB Notification) (listing diagnosis of "Lumbar, Disc Disease").  MEB examinations were conducted at the Darnall Army Medical Center at Fort Hood by Dr. Marie Adams (Dr. Adams), a psychiatrist, and by Dr. Kimberly Kesling (Dr. Kesling), a

physician on the orthopedic staff.  See AR 120-23 (December 12, 2007 record of examination by Dr. Adams); AR 124-28 (March 13, 2008 record of examination by Dr. Kesling).  Dr. Adams also determined that Captain Joslyn was competent to participate in the Disability Evaluation System.  See AR 122 (December 12, 2007 record of examination by Dr. Adams) ("[Captain] Joslyn is capable [of] participating in the MEB proceedings.").  Captain Joslyn's active duty was extended until August 30, 2008 to allow him to complete Disability Evaluation System processing.  See AR 114 (March 21, 2008 grant of extension).

The MEB, "after consideration of clinical records, laboratory findings, and physical examination," found that Captain Joslyn had the following three "medically unacceptable" conditions:  chronic PTSD (originating in 2004), lumbar degenerative disc disease with facet arthritis (originating in 2003) and left anterior knee pain (originating in 2007).  AR 54 (MEB proceedings, DA Form 3947) (capitalization omitted).  Accordingly, the MEB referred Captain Joslyn to the second tier of the Disability Evaluation System, a PEB.  See id.  Dr. Adams and Dr. Kesling signed the MEB proceeding form as the examining doctors, and Captain Joslyn signed the form and indicated that he agreed with the findings and recommendations of the MEB.  See id. at 55.

Informal PEB proceedings took place on May 8, 2008.  See AR 27 (informal PEB proceedings cover memorandum).  "Based on a review of the objective medical and personnel evidence of record and considering the physical requirements for reasonable performance of duties required by grade and military specialty, the [informal] PEB [found Captain Joslyn] fit for duty . . . ."  AR 28 (informal PEB proceedings, DA Form 199).  The informal PEB explained the rationale for its finding as follows:

> [Captain Joslyn] has performed his duties in an exceptional manner as evidenced by his Commander's letter [from Lt. Col. Baker] dated 10 March 2008 and his [Officer Evaluation Reports].  His Commander states that he can adequately perform the duties of his office and grade.  His medical conditions of PTSD, degenerative disc disease and left knee pain did not prevent him from completing his military obligation or performing assigned duties.  The mere presence of a condition does not automatically constitute an unfit finding.

Id.; cf. AR 36-37 (commander's statement from Lt. Col. Baker); AR 41-49 (officer evaluation reports for July 2004-June 2007).  In response to the informal PEB findings, Captain Joslyn submitted an election of nonconcurrence with a request for a formal PEB and personal appearance and indicated that he would be represented by counsel of his choice should his request be granted.  See AR 24 (DA Form 199 reporting election).

The formal PEB took place on June 11, 2008.  See AR 23 (formal PEB proceedings cover memorandum).  The formal PEB also found Captain Joslyn "fit for duty."  AR 17 (formal PEB proceedings, DA Form 199).  The formal PEB explained its rationale in identical or nearly identical language to that used by the informal PEB, with the addition that "[d]uring formal proceedings, the PEB reevaluated all available medical records and sworn testimony by [Captain Joslyn]."  See id.; see also Def.'s App. DA 30 (Army Reg. 635-40 ¶ 4-21(b)) (providing that a soldier may "present views, testimony, and new evidence" at a formal PEB hearing).  The formal PEB also addressed arguments raised by Captain Joslyn's counsel, stating:

> [Captain Joslyn]'s record demonstrates that he has performed his duties in a satisfactory manner during the entire timeframe that he has had the symptoms of PTSD, low back pain, and left knee pain.  His [Officer Evaluation Reports] and Commander's letter show no adverse impact on his performance.  Although [Captain Joslyn] states that he has no responsibilities other than to check the supply room, this is not unexpected since he put in his resignation in May 2007 . . . .  [Captain Joslyn] stated that he was doing his out-processing physical he discussed all of his physical complaints with the provider who then recommended [an MEB].  There was no decrement in his performance due to these conditions.  In addition, there is no evidence that his conditions or their treatment have altered his Top Secret Security clearance.

AR 17 (formal PEB proceedings, DA Form 199).  After receiving the formal PEB findings, see AR 21 (letter of instructions for formal PEB proceedings) (acknowledging receipt of DA Form 199 by Captain Joslyn's signature), Captain Joslyn failed to timely submit his election, see AR 20 (memorandum from formal PEB president).  Nevertheless, Captain Joslyn, through his PEB liaison, appeared to have made arrangements to submit his rebuttal and election after the deadline.  See AR 7 (chronological MEB case status) (stating that although Captain Joslyn had not submitted his rebuttal by the 8:00 a.m. deadline on June 23, 2008, his PEB liaison had informed the PEB that the rebuttal would be submitted by fax later that morning); cf. AR 21 (letter of instructions for formal PEB proceedings) (stating that if the ten-day rebuttal deadline would fall on a weekend, as it apparently did here, the soldier has until 8:00 a.m. on the following Monday).

There appears to be some confusion over when Captain Joslyn's rebuttal was actually sent and received.  See AR 7 (chronological MEB case status) (showing entry for June 27, 2008 stating that the PEB did not receive Captain Joslyn's fax and had forwarded the case to the PDA as a "failure to elect" and subsequent other entries stating that the materials were purportedly faxed but not received on multiple occasions (capitalization omitted)); AR 9-11 (July 11, 2008 e-mail correspondence from Captain Joslyn) (stating that the PEB had never received his rebuttal and accompanying new memorandums).  In the meantime, the formal PEB findings were approved by the PDA

on July 1, 2008, constituting the "final administrative action" regarding Captain Joslyn's Disability Evaluation System processing.  AR 15 (PDA memorandum approving PEB findings).  Nevertheless, the PDA informed Captain Joslyn's PEB liaison by phone on August 1, 2008 that Captain Joslyn's rebuttal was received and considered but that the findings remained unchanged.  AR 7 (chronological MEB case status).

        The materials submitted by Captain Joslyn in rebuttal included Captain Joslyn's election of nonconcurrence, a rebuttal statement explaining his position, see Pl.'s App. 1 (DA Form 199-1), and new memorandums from Major Diaz, see AR 12-14 (cover memorandum and commander's statement from Major Diaz).[6]  In his rebuttal statement, Captain Joslyn wrote, "The exceptional performance stated on my past [officer evaluation reports] from 2003-2005 [was] before my injuries affected my performance."  Pl.'s App. 1 (DA Form 199-1).  Captain Joslyn further stated that, because he had not yet completed training necessary to be classified as a military intelligence officer, his fitness evaluation under the standard for military intelligence officers was incorrect, and alleged that, had he been evaluated under what he argued was the correct standard, as an infantry officer, he would have been found unfit.  Id.  Finally, Captain Joslyn argued that the PEB's finding of fitness was "significantly bias[ed] on the fact that [he] had submitted a resignation" and that his "Commanding Officer [Lt. Col. Baker] failed to accurately depict" his performance.  Id.  The memorandums submitted by Major Diaz, which described his experience with Captain Joslyn beginning in November 2005, stated that "[Captain] Joslyn does not seem to have the physical or mental ability to perform as a leader and a mentor.  I do not believe he will be able to perform the duties expected of his grade and branch."  AR 12 (cover memorandum from Major Diaz).  Major Diaz rated Captain Joslyn's performance as "unsatisfactory," asserting that he was often difficult to deal with, was overweight, required supervision, was often late for work, often lost focus and concentration, had a hard time remembering instructions and lacked attention.  AR

_____

        [6] Although Captain Joslyn's election and rebuttal statement (the rebuttal), see Pl.'s Supplemental App., Dkt. Nos. 11-1 to 11-2, at 1 (DA Form 199-1), were not included in the administrative record (AR), Dkt. No. 7, defendant "agree[s] that the rebuttal should be included" because "the [U.S. Army Physical Disability Agency (PDA)] considered [the] rebuttal," Def.'s Reply 20 n.7.  Accordingly, the court supplements the administrative record with Captain Joslyn's rebuttal.  Cf. Bateson v. United States, 48 Fed. Cl. 162, 164 (2000) (stating that the evidentiary record for judicial review properly comprises files and records that "would have been before the deciding official").  The court observes that the memorandums by Major (Retired) Ricardo Diaz (Major Diaz), dated July 2, 2008, see AR 12-14 (cover memorandum and commander's statement from Major Diaz), and submitted with Captain Joslyn's rebuttal were written after the June 23, 2008 deadline for submitting rebuttal materials, see AR 7 (chronological MEB case status) (referencing deadline).  Nevertheless, the memorandums were also considered by the PDA, see id. (stating that Captain Joslyn's rebuttal to the Physical Evaluation Board (PEB) findings was received and considered), and were included in the administrative record, see AR 12-14 (cover memorandum and commander's statement from Major Diaz), and will also be considered by the court.

13 (commander's statement from Major Diaz).  In addition, Major Diaz stated that
Captain Joslyn was eventually removed from his job as assistant ROTC instructor "and
used sparingly as Special Projects Officer."  AR 12 (cover memorandum from Major
Diaz).

After being informed that the PDA findings remained unchanged after
consideration of these rebuttal materials, AR 7 (chronological MEB case status), Captain
Joslyn requested a second MEB, stating, without elaboration, "based on the treatment and
new care that I have received at the Warrior Transition Unit, I have new developments in
my medical conditions that warrant a new review to begin at the MEB," AR 9 (August 1,
2008 e-mail from Captain Joslyn).  At this point, although he had been notified of the
PDA's decision, Captain Joslyn's Disability Evaluation System processing appears
officially to still have been pending.  See AR 110 (MEB/PEB processing retention
memorandum) (stating that Captain Joslyn's MEB and PEB were "pending final
adjudication" by the PDA).  Accordingly, Captain Joslyn's active duty was extended a
second time, until November 30, 2008, to allow for completion of his Disability
Evaluation System processing and follow-up medical care.  See AR 109-11
(memorandums regarding medical retention).  The PDA provided additional notification
on August 28, 2008 that its findings remained unchanged, and Captain Joslyn's PEB
liaison made arrangements that same day for Captain Joslyn to pick up his "fit for duty"
memorandum and updated profile.  See AR 7 (chronological MEB case status); see also
AR 4 (fit for duty memorandum from PEB liaison).  Although Captain Joslyn's
subsequent medical records contain numerous references to medical boards and a
pending appeal to the MEB, see, e.g., AR 401-02, 426, 441, 541, 559, 592-93, 600
(medical records referencing a second MEB), plaintiff concedes that the record contains
no evidence that Captain Joslyn was actually referred to a second MEB, see Pl.'s Mot. 15
("[T]he medical and administrative records appear void of any formal referral to a second
MEB.").  However, Captain Joslyn's active duty was again extended, until December 31,
2008, to allow him to continue receiving medical care as a follow up to his Disability
Evaluation System processing.[7]  See AR 103 (November 26, 2008 grant of extension)

---

[7] Although the extension stated that it was granted "until follow up medical care or
disability processing [was] complete," see AR 103 (November 26, 2008 grant of extension)
(capitalization omitted), it appears that Captain Joslyn's Disability Evaluation System processing
was no longer pending when this extension was granted on November 26, 2008.  The last entry
in Captain Joslyn's Chronological MEB Case Status log is from September 17, 2008, when
Captain Joslyn's fit for duty memorandum and updated profile were e-mailed to the Warrior
Transition Battalion, to which Captain Joslyn was being transferred in anticipation of his
resignation.  See id. at 7 (chronological MEB case status).  The fit for duty memorandum was
prepared on August 28, 2008, after the PDA provided notification that its findings remained
unchanged.  See id.  Therefore, it appears that Captain Joslyn's Disability Evaluation System
processing was closed by November 26, 2008 but that his active duty status was extended to
allow him to attend medical appointments.  See AR 292 (medical records) (documenting
November 25, 2008 telephone consultation in which arrangements "for an additional [eight]

(extending active duty "until follow up medical care or disability processing is complete" (capitalization omitted)); AR 104 (medical retention memorandum) (stating that human resources recommends an extension "until follow up medical care or disability[] processing is complete"); AR 108 (affidavit of Captain Joslyn) (citing "medical appointments after completing . . . physical disability evaluation" as grounds for extension).

On November 7, 2008, Captain Joslyn requested to withdraw his previously approved resignation request so that he could participate in the Army's Critical Skills Retention Bonus program.  See AR 3 (withdrawal request).  However, his commanders opposed the request.  Id. (showing "Nonconcur" circled next to signatures of each of William Greene, Jr., with handwritten note, "Soldier is currently being considered for [Uniform Code of Military Justice] adverse actions,"[8] and David Thompson, with handwritten note, "[Captain] Joslyn cannot accomplish the simpl[]est of task[s]").  Captain Joslyn was reassigned to the Fort Hood Transition Center on November 28, 2008 to begin his transition out of the Army.  AR 138 (Army orders of November 28, 2008).

On December 11, 2008, Captain Joslyn called the Darnall Army Medical Center's psychiatry department and expressed an urgent need for documentation.  See AR 267 (medical records) (documenting a December 11, 2008 telephone consultation).  On December 12, 2008, Dr. Kathryn Trotsky (Dr. Trotsky) indicated that she had spoken with Captain Joslyn, who, according to Dr. Trotsky's notes, needed a "not fit" determination, "as he [was] withdrawing his request to resign his commission and [was] having his Medical Board re-submitted."  Id. at 269.  Dr. Trotsky then completed an evaluation form on which she recorded a diagnosis of PTSD and indicated that Captain Joslyn was not fit for duty.  Id. at 259.  Captain Joslyn visited the psychiatry department

---

visits" were discussed); id. at 290 (stating that Captain Joslyn wanted to extend his November 30, 2008 separation date "for clearing purposes").

[8] Captain Joslyn received a memorandum of reprimand on December 17, 2008 for "repeatedly failing to go to [his] appointed place of duty" and for missing appointments "[e]ven after being counseled and ordered by [his] Battalion Commander to go to [his] appointments." AR 623 (memorandum of reprimand (the reprimand)).  The reprimand was filed permanently in Captain Joslyn's Official Military Personnel File.  AR 620 (memorandum directing permanent filing).  Although Captain Joslyn stated in rebuttal to the reprimand that he "struggled with medical conditions that caused [him] to miss appointments," AR 625 (rebuttal memorandum), all three reviewing commanders recommended that the reprimand be filed permanently, and, in particular, one commander noted that "[Captain] Joslyn had similar issues with his previous unit ([Reserve Officer Training Corps (ROTC)-University of Texas at Arlington])" but "there was no medical evidence to support or mitigate his misconduct," AR 621 (filing recommendation form).  The court observes that the filing recommendation form states that the reprimand was issued for "Driving While Intoxicated," but no such allegation is mentioned in the reprimand.  Compare AR 621 (filing recommendation form), with AR 623 (reprimand).

for triage on December 16, 2008 because, according to the triage notes, he "fe[lt] like punching someone" and "fe[lt] upset and angry at the decisions made at his command levels." Id. at 256. Captain Joslyn also reported that he "plan[ned] to go for [an] MEB." Id. On December 18, 2008, Captain Joslyn met with Dr. Trotsky for an appointment to follow up on his medication, after which she noted:

> I did not have all the accurate information when I deemed this soldier not [fit for duty] last week. I was under the impression that he was appealing his Medical Board, whereas he had already appeal[]ed and the original ruling was not overturned. [Captain Joslyn] apparently became aware of this around the end of July or beginning of August. He subsequently attempted to rescind his request to resign his commission . . . . The symptoms which he currently endorses which he believes make[] him unfit for duty are memory problems, word-finding problems, problems with spelling. He describes "emotional outbursts" in which he will cry which occur about 10 times a month. He describes episodes of "losing time" during which he "is in a daze." He had neuropsychological testing done in Oct 2008 which showed very mild cognitive impairment which is not a medical boardable condition.

Id. at 252-53. Dr. Trotsky completed a new evaluation form after the appointment, revising her diagnosis from PTSD to depression and cognitive disorder and changing her assessment to fit for duty. Id. at 249.

Captain Joslyn was honorably discharged from the Army on December 31, 2008, see AR 2 (certificate of discharge). He cleared from the installation without being present on January 5, 2009, after failing to clear on his discharge date. AR 137 (clearance memorandum). That same day he was notified that his request to withdraw his resignation had been "reviewed as an exception to policy and not favorably considered." AR 1 (memorandum denying withdrawal request).

C.     Prior Litigation

Immediately prior to his discharge, on December 30, 2008, Captain Joslyn filed suit in this court, asserting as a basis for his claims the same facts that are pleaded in the present case. See Joslyn v. United States (Joslyn I), 90 Fed. Cl. 161 (2009), aff'd in part and vacated in part, (Joslyn II), 420 F. App'x 974 (Fed. Cir. 2011) (per curiam) (unpublished decision). This court dismissed plaintiff's claims for lack of jurisdiction and, in the alternative, granted judgment on the administrative record in favor of defendant. Joslyn I, 90 Fed. Cl. at 166. More specifically, the complaint in Joslyn I pleaded the Tucker Act, the court's statute of limitations, the Little Tucker Act, and the APA in support of plaintiff's claims, but this court found that it lacked jurisdiction because "plaintiff fail[ed] to invoke a money-mandating statute and therefore fail[ed] to

meet his burden of proving that jurisdiction in this court [was] proper." Id. at 177-78. However, in the alternative, this court construed plaintiff's complaint in Joslyn I "to include a claim for retirement pay under the money-mandating 10 U.S.C. § 1201" and to include "a wrongful discharge claim . . . under the money-mandating Military Pay Act, 37 U.S.C. § 204," and found "that defendant [was] entitled to judgment on upon the Administrative Record" with regard to those claims. Id. at 178.

With respect to the claim inferred under 10 U.S.C. § 1201, challenging the PEB's finding of fitness, this court stated that it could "find no evidence or fact properly put before the PEB that was overlooked or ignored. . . . Finding certain . . . evidence unpersuasive is not the same as ignoring evidence." Joslyn I, 90 Fed. Cl. at 180-81. This court concluded that "[i]t is sufficient that the PEB addressed the evidence and articulated and applied the correct legal standard," making the PEB's decision "neither arbitrary nor capricious." Id. at 181. Accordingly, this court held that Captain Joslyn was "not entitled to disability retirement pay under 10 U.S.C. § 1201. Id.

With respect to the claim inferred under the Military Pay Act, 37 U.S.C. § 204, this court concluded that Captain Joslyn had "not alleged circumstances that would rebut the presumption of voluntariness" of his discharge and that his withdrawal request was untimely. Id. at 182-83. Further, this court stated that even if the withdrawal request "had been timely, the Army acted within its wide discretion to accept or reject [Captain Joslyn's] request." Id at 183. Accordingly, this court held that because Captain Joslyn had "not met his burden of proving that his resignation from the Army was involuntary," his wrongful discharge claim under the Military Pay Act also failed. Id. at 184.

On appeal, the United States Court of Appeals for the Federal Circuit (Federal Circuit) affirmed the court's dismissal for lack of jurisdiction but, because this court "therefore did not have jurisdiction to grant judgment on the administrative record," vacated the judgment on the merits. Joslyn II, 420 F. App'x at 979-80. The Federal Circuit also noted that this court, in granting judgment on the administrative record, had not inferred a money-mandating cause of action for Captain Joslyn's second and third claims for relief, which were pleaded solely on the basis of the APA. Id. at 977. Finally, the Federal Circuit stated that, because his claims were dismissed without prejudice, Captain Joslyn could "file a new, properly drafted complaint unless his claims [were] time-barred." Id. at 980. Subsequently, Captain Joslyn filed the present case on September 14, 2012. See generally Compl.

II.    Legal Standards

A.    Jurisdiction

A court must determine at the outset of a case whether it has subject matter jurisdiction over the claims before it. See Steel Co. v. Citizens for a Better Env't, 523

U.S. 83, 94-95 (1998); PODS, Inc. v. Porta Stor, Inc., 484 F.3d 1359, 1365 (Fed. Cir. 2007).  If the court determines that it does not have jurisdiction over a claim, the claim must be dismissed.  See RCFC 12(h)(3).  The burden is on the plaintiff to show jurisdiction by a preponderance of the evidence.  Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir. 2002).

The United States Court of Federal Claims (Court of Federal Claims) is a court of limited jurisdiction that, pursuant to the Tucker Act, may hear "any claim against the United States founded . . . upon . . . any Act of Congress or any regulation of an executive department . . . ." 28 U.S.C. § 1491(a) (2006).  The Tucker Act serves as a waiver of sovereign immunity and a jurisdictional grant, but it does not create a substantive cause of action. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008).  A plaintiff must, therefore, satisfy the court that "'a separate source of substantive law . . . creates the right to money damages.'" Id. (quoting Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)).  Section 1201 of title 10 of the United States Code, which governs military retirement for disability, is such a money-mandating statute. Chambers v. United States, 417 F.3d 1218, 1223 (Fed. Cir. 2005); Fisher v. United States, 364 F.3d 1372, 1379 (Fed. Cir. 2004), rev'd on other grounds, 402 F.3d 1167 (Fed. Cir. 2005); see 10 U.S.C. § 1201 (governing disability retirement pay).  The Military Pay Act, 37 U.S.C. § 204, under which a wrongful discharge claim may be brought, is also money mandating. Martinez, 333 F.3d at 1303; see 37 U.S.C. § 204(a)(1) (entitling soldiers on active duty to the basic pay of their pay grade in accordance with their years of service).

The court's six-year statute of limitations, a condition on the Tucker Act's waiver of sovereign immunity, further limits the court's jurisdiction.  See Martinez, 333 F.3d at 1316 ("It is well established that statutes of limitations for causes of action against the United States, being conditions on the waiver of sovereign immunity, are jurisdictional in nature."); see also Soriano v. United States, 352 U.S. 270, 276 (1957) (stating that the United States Supreme Court (Supreme Court) "has long decided that limitations and conditions upon which the Government consents to be sued must be strictly observed").  The statute of limitations provides that claims over which the Court of Federal Claims would otherwise have jurisdiction "shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501.

Although equitable remedies are generally outside this court's jurisdiction, equitable relief "as an incident of and collateral to" judgment for money damages is available "to provide an entire remedy and to complete the relief afforded by the judgment." 28 U.S.C. § 1491(a)(2).  "[P]lacement in appropriate duty or retirement status" is one such equitable remedy available in this court "as an incident of and collateral to" a money judgment. Id.; see Haskins v. United States, 51 Fed. Cl. 818, 822 (2002).

B.      Judgment on the Administrative Record

Rule 52.1(c) of the RCFC provides for motions for judgment on the administrative record.  See RCFC 52.1(c)(1) (providing that "a party may move for partial or other judgment on the administrative record").  A motion for judgment on the administrative record is "distinguish[able]" from a motion for summary judgment in that there is no requirement that all material facts be undisputed.  Bannum, Inc. v. United States, 404 F.3d 1346, 1355 (Fed. Cir. 2005); see also RCFC 52.1 rules committee note (2006) ("Summary judgment standards are not pertinent to judicial review upon an administrative record.").  "The standards and criteria governing the court's review of agency decisions [on a Rule 52.1(c) motion] vary depending upon the specific law to be applied in particular cases."  RCFC 52.1 rules committee note (2006).

This court has reviewed decisions of military disability evaluation boards (such as the decision of the PEB and affirmance by the PDA at issue in this case) under the APA standard of review for a decision by the Army Board for Corrections of Military Records, that is, whether the decision "is arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes or regulations."[9]  See, e.g., Santiago v. United States, 71 Fed. Cl. 220, 226 (2006) (finding PEB's determination that soldier was unfit for duty and affirmance by PDA arbitrary for failure to consider relevant evidence); Bernard v. United States, 59 Fed. Cl. 497, 501 (2004), aff'd, 98 F. App'x 860 (Fed. Cir. 2004) (per curiam) (unpublished decision) (reviewing PEB and PDA proceedings); cf. Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983) (holding that the standard governing military disability retirement cases is whether the military's "action was arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature" (internal quotation marks omitted)).

C.      Supplementation of the Administrative Record in Military Pay Cases

The Federal Circuit has held that a plaintiff challenging the determinations of a military correction board is "entitled" to supplement the administrative record.  See Heisig, 719 F.2d at 1157.  This holding was based on principles articulated by the United

---

[9] Although the circumstances of this case are somewhat unusual in that Captain Joslyn has appealed the PEB and PDA decisions directly to this court, instead of first appealing the decisions at the agency level (through the Army Board for Corrections of Military Records), there is no requirement that Captain Joslyn exhaust his administrative remedies prior to seeking judicial review.  See Heisig v. United States, 719 F.2d 1153, 1155 (Fed. Cir. 1983); cf. Friedman v. United States, 310 F.2d 381, 395-96 (Ct. Cl. 1962) (stating that the judicial claim for disability retirement pay accrues upon final action of a board competent to decide eligibility); Chambers v. United States, 417 F.3d 1218, 1225 n.2 (Fed. Cir. 2005) (stating that a PEB is competent to decide eligibility).

States Court of Claims (Court of Claims)[10] in <u>Brown v. United States</u>, 184 Ct. Cl. 501, 396 F.2d 989 (1968).  In <u>Brown</u>, the Court of Claims stated that "the most important operational characteristic of both the [Military] Correction Board and the [PEB] . . . is that their function is to investigate the possibility that a serviceman is suffering from a service-connected disability."  <u>Brown</u>, 184 Ct. Cl. at 510, 396 F.2d at 995.  Further, the Court of Claims observed in <u>Brown</u> that "the Correction Board's practice of accepting de novo evidence . . . even though the applicant was accorded a full hearing before a [PEB]" was "[c]onsistent with the investigatory nature of the [Board's] administrative function." <u>Id.</u> at 510-11, 396 F.2d at 996.  Accordingly, the Court of Claims in <u>Brown</u> affirmed the trial commissioner's order denying the defendant's motion to preclude de novo evidence, stating that the court's "consistent practice of not barring de novo evidence in military disability-retirement cases" gave "due deference to the administrative decision . . . without scanting the claimant's procedural rights or the defendant's opportunity to explain and support the board ruling."  <u>Id.</u> at 517-18, 396 F.2d at 999-1000.  The court further observed that when a "claimant by-passes the Correction Board and comes directly to this court from a decision of the PEB . . . , there is no one to perform this function [of accepting de novo evidence] except the court" and stated that such a procedure is necessary because "it is sometimes impossible to diagnose accurately the existence, extent, or nature of a disability on the basis of the facts know at the time of separation."  <u>Id.</u> at 511, 396 F.2d at 996.

The Federal Circuit, however, has recently taken a more restrictive approach to supplementation, stating that "judicial review of decisions of military correction boards is conducted under the APA" standard of review and "is generally limited to the administrative record."  <u>Walls v. United States</u>, 582 F.3d 1358, 1367 (Fed. Cir. 2009) (discussing <u>Fla. Power & Light Co. v. Lorion</u> (<u>Florida Power & Light</u>), 470 U.S. 729 (1985)); <u>see also</u> <u>Metz v. United States</u>, 466 F.3d 991, 998 (Fed. Cir. 2006) (stating that, when the court reviews a military correction board's action, review is "necessarily limit[ed] . . . to the administrative record").  In cases where the record is found insufficient, new evidence (instead of remanding to the board) is generally allowed only if the evidence was unavailable below or there is a strong showing of bad faith on the part of the agency.  <u>See</u> <u>Bateson v. United States</u>, 48 Fed. Cl. 162, 165 (2000) (citing <u>Wyatt v. United States</u>, 23 Cl. Ct. 314, 319 (1991)); <u>see also</u> <u>Walls</u>, 582 F.3d at 1368 (stating that when "a claimant has held back evidence [from a military corrections board] in order to offer it in court, the obvious and simple remedy is to exclude it" (internal quotation marks omitted)).

---

[10] The United States Court of Claims (Court of Claims) is the predecessor court to this court and a predecessor to the United States Court of Appeals for the Federal Circuit.  When acting in its appellate capacity, the Court of Claims created precedent that is binding on this court.  <u>South Corp. v. United States</u>, 690 F.2d 1368, 1369 (Fed. Cir. 1982) (en banc).

This court has noted that restricting review to the administrative record in military correction board cases "seems to conflict with the express holding" of Heisig, see Greene v. United States, 65 Fed. Cl. 375, 382 n.3 (2005); cf. Riser v. United States, 93 Fed. Cl. 212, 218 n.5 (2010) ("[T]he record-supplementation aspect of Heisig and Brown has since been overtaken in the Federal Circuit by a reliance on Florida Power & Light to require a remand to a board to consider relevant evidence that had been omitted . . . ."). The court also notes that no en banc Federal Circuit decision or Supreme Court decision has overruled Brown.  See Walls, 582 F.3d at 1369, 1382 (Newman, J., dissenting) ("No statute or precedent has disturbed the holding of Brown or undermined its reasoning. . . . My colleagues' suggestion that the Court of Federal Claims hereafter must reject supplemental evidence in military correction board cases is contrary to the precedent that binds this court."); see also id. at 1368 (majority opinion) ("We need not, however, in this case decide whether Brown is good law in the light of subsequent Supreme Court authority.").

Under the standard articulated in Heisig, the court has allowed de novo evidence "to fill any gaps in the record and to provide post-separation information."  Lyons v. United States, 18 Cl. Ct. 723, 727 (1989); see Long v. United States, 12 Cl. Ct. 174, 175-76 (1987).  Both the record and the de novo evidence are considered to determine whether the decision of the military disability evaluation board was supported by substantial evidence.  See Beckham v. United States, 179 Ct. Cl. 539, 544, 375 F.2d 782, 785 (1967); see also infra Part II.D (describing substantial evidence standard).

D.      Disability Pay Claim Under 10 U.S.C. § 1201

Generally, a soldier may be entitled to disability retirement pay if the Secretary of the Army retires the soldier after a determination that the soldier is "unfit to perform the duties of [his] office, grade, rank, or rating because of physical disability incurred while entitled to basic pay."  10 U.S.C. § 1201(a).  More specifically, a soldier who has served fewer than twenty years of service is eligible for disability retirement pay if he is found unfit for duty and his disability is permanent, was incurred in the line of duty and is rated "at least 30 percent under the standard schedule of rating disabilities in used by the Department of Veterans Affairs."  Id. § 1201(b).  "When a finding of unfitness depends on the combined effect of two or more disabilities, each disability must meet the . . . eligibility requirements to qualify the Soldier for disability retirement or severance pay."  Def.'s App. DA 24 (Army Reg. 635-40 ¶ 4-19(f)(4)).  Moreover, "if the evidence establishes . . . that the Soldier adequately performed the normal duties of his . . . office, grade, rank, or rating until the time of referral for physical evaluation, the Soldier might be considered fit for duty . . . even though medical evidence indicates" that the soldier's ability to perform his duties "may be questionable."  Id. at DA 13 (¶ 3-1(c)).  A cause and effect relationship must exist between "inadequate duty performance and the presence of physical disabilities."  Id.

The court's review of military disability pay cases is limited to determining whether a decision of a board competent to make determinations as to a soldier's eligibility for disability retirement "is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." Chambers, 417 F.3d at 1227; Heisig, 719 F.2d at 1156; see Stephens v. United States, 174 Ct. Cl. 365, 371-72, 358 F.2d 951, 954 (1966) ("This court has held on many occasions that it has no power to review the decisions of the Secretary of one of the military departments or his authorized representatives in such a case unless the petitioner shows by cogent and clearly convincing evidence that such determinations are arbitrary, capricious, or not supported by substantial evidence.")

To show that a military disability evaluation board acted arbitrarily and capriciously, a plaintiff must demonstrate that evidence was ignored or unreasonably construed or that designated duties were not performed by the board. See Stephens, 174 Ct. Cl. at 373-74, 358 F.2d at 955 (finding the Army's fit for duty determination reasonable when the record did "not warrant the conclusion that the personnel involved ignored relevant and competent evidence, . . . unreasonably construed the significant body of medical documents before them, or . . . failed to discharge their designated duties" in any other manner). Moreover, the plaintiff bears the burden of overcoming the "strong, but rebuttable, presumption that administrators of the military . . . discharge their duties correctly, lawfully, and in good faith." Sanders v. United States, 594 F.2d 804, 813 (Ct. Cl. 1979), superseded by statute on other grounds, Defense Officer Personnel Management Act of 1980, Pub. L. No. 96-513, § 105, 94 Stat. 2835, 2859-60 (codified as amended at 10 U.S.C. § 628), as recognized in Richey v. United States, 322 F.3d 1317 (Fed. Cir. 2003).

In determining whether a military disability evaluation board's decision was supported by substantial evidence, "the court must consider whether the [board's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one." Citizens to Preserve Overton Park v. Volpe (Overton Park), 401 U.S. 402, 416 (1971) (internal citations omitted), superseded by statute on other grounds, Pub. L. No. 94-574, 90 Stat. 2721 (1976) (codified as amended in relevant part at 28 U.S.C. § 1331(a)), as recognized in Califano v. Sanders, 430 U.S. 99 (1977); accord Bond v. United States, 47 Fed. Cl. 641, 663 (2000). The court cannot substitute its judgment for that of examining physicians, a medical evaluation board or physical evaluation board. See Heisig, 719 F.2d at 1156-57; see also Sanders, 594 F.2d at 813 ("[W]hile [the court] may disagree with a correction board about whether or not a specific situation was unjust, [the court] will not substitute [its] judgment for the board's when reasonable minds could reach differing conclusions."). "[T]he standard of review does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." Heisig, 719 F.2d at 1157 (emphasis omitted). "Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a

20

conclusion." Jennings v. Merit Sys. Prot. Bd., 59 F.3d 159, 160 (Fed. Cir. 1995); accord Bond, 47 Fed. Cl. at 663.

      E.      Wrongful Discharge Claim Under the Military Pay Act, 37 U.S.C. § 204

      The Military Pay Act provides that a soldier on active duty is entitled to the basic pay of his pay grade in accordance with his years of service.  37 U.S.C. § 204(a); cf. Adkins v. United States, 68 F.3d 1317, 1321 (Fed. Cir. 1995) (stating that a military officer falls within the scope of those entitled to basic pay under 37 U.S.C. § 204).  A wrongful discharge claim alleges that, "because of the unlawful discharge, the plaintiff is entitled to money in the form of the pay that the plaintiff would have received but for the unlawful discharge."  Martinez, 333 F.3d at 1303.  The plaintiff asserting a wrongful discharge claim has the burden of establishing that his separation from the military was involuntary.  See Metz, 466 F.3d at 998.  "The focus of [the voluntariness] inquiry is whether the plaintiff exercised a free choice in making the resignation or retirement decision."  McIntyre v. United States, 30 Fed. Cl. 207, 211 (1993).

      Resignation from the military is presumed to be voluntary, Tippett v. United States, 185 F.3d 1250, 1255 (Fed. Cir. 1999), abrogated in part on other grounds by Metz, 466 F.3d at 997-98, but the presumption is rebuttable in certain circumstances, see Scharf v. Dep't of the Air Force, 710 F.2d 1572, 1574 (Fed. Cir. 1983).  Specifically, courts have held that "the element of voluntariness is vitiated" in situations where "(1) an employee resigns under duress brought on by government action; (2) an employee unsuccessfully tries to withdraw his resignation before its effective date; (3) an employee submits a resignation under time pressure; . . . (4) an employee fails to understand the situation due to mental incompetence"; or (5) resignation is "obtained by agency misrepresentation or deception."  Id. (internal citations omitted).  A resignation "is not rendered involuntary by the imminent imposition of a less desirable alternative."  Sammt v. United States, 780 F.2d 31, 32 (Fed. Cir. 1985); see Scarseth v. United States, 52 Fed. Cl. 458, 474 (2002) ("The fact that [the plaintiff] was required to choose between submitting a voluntary resignation and facing trial by court-martial does not render his resignation involuntary.").

      The Army has wide discretion to accept or reject a request to withdraw a resignation.  See Cole v. United States, 231 Ct. Cl. 702, 704, 689 F.2d 1040, 1041 (1982) ("The Secretary [of the Army] can exercise discretion to accept [a resignation] or not, and allow the withdrawal or not, and his decision will be sustained if not arbitrary and capricious and contrary to law.").  The Army's decision as to whether to accept a resignation "must be granted substantial deference."  Brown v. United States, 30 Fed. Cl. 227, 231 (1993), aff'd, 26 F.3d 139 (Fed. Cir. 1994) (unpublished table decision).

III.     Discussion

      A.      Jurisdiction

Notwithstanding the court's finding that defendant's Motion is MOOT to the extent that it seeks dismissal of plaintiff's claims under RCFC 12(b)(1), see supra p. 4, the court must satisfy itself at the outset of the case that its jurisdiction is proper, see Steel Co., 523 U.S. at 94-95; PODS, Inc., 484 F.3d at 1365.  In this case, the court is satisfied that plaintiff's claims under 10 U.S.C. § 1201 and the Military Pay Act, 37 U.S.C. § 204, are properly before it.  Cf. supra pp. 2-3 and note 2 (stating that, because plaintiff has withdrawn its second and third claims, which were based solely on the APA, the court shall consider only plaintiff's first claim, based on 10 U.S.C. § 1201, and plaintiff's fourth claim, based on the Military Pay Act).  Each of these claims is based on a money-mandating statute, cf. supra Part II.A (stating that 10 U.S.C. § 1201 and 37 U.S.C. § 204 are each money mandating); Jan's Helicopter Serv., Inc., 525 F.3d at 1306 (stating that a separate money-mandating source of law is necessary for Tucker Act jurisdiction), and each claim has accrued within the court's six-year statute of limitations, cf. 28 U.S.C. § 2501 (providing for six-year statute of limitations).  Compare supra Part I.B (stating that the military disability evaluation board determinations, which are pleaded as the basis of Captain Joslyn's disability pay claim under 10 U.S.C. § 1201, and Captain Joslyn's unsuccessful request to withdraw his resignation and subsequent discharge, which are pleaded as the basis of his wrongful discharge claim under 37 U.S.C. § 204, all occurred in 2008), with Compl. (showing filing date of September 14, 2012, fewer than six years after the 2008 events that plaintiff alleges are the grounds for his claims).  Further, to the extent that plaintiff seeks relief in the form of placement in the appropriate retirement status, see Compl. ¶¶ 41, 44 (asking the court to assign disability ratings), such relief is within the court's jurisdiction "as an incident of and collateral to" a money judgment under 10 U.S.C. § 1201, see supra Part II.A; cf. 28 U.S.C. § 1491(a)(2); Haskins, 51 Fed. Cl. at 822.

B.      Motion to Supplement the Administrative Record

Captain Joslyn requests that the court "supplement the administrative record with two Department of Veterans Affairs [(VA)] Rating Decisions issued shortly after the administrative proceedings on review."  Pl.'s AR Mot. 1; see also Pl.'s App. 8-18 (VA rating decision dated May 13, 2009 (first rating decision)); Pl.'s App. 2-7 (VA rating decision dated October 28, 2009 and accompanying cover letter (second rating decision)).  Plaintiff argues that the two VA decisions "show that the [Army's] decision was incorrect when it determined that Captain Joslyn was fit for duty" and that, "in light of the drastic difference between the Army findings and the VA findings[,] . . . the VA decisions are necessary for meaningful review."  Pl.'s AR Mot. 2.  Plaintiff also argues that the VA considered relevant factors that were overlooked by the Army, such as whether Captain Joslyn would be able "to engage in substantial gainful employment."  Id. at 3.

Defendant argues that the VA decisions are not necessary to permit meaningful review of the Army's fitness determination, Def.'s AR Resp. 1, 3-4, and that they are not binding on the court or the Army, id. at 5.  Further, defendant acknowledges that "VA

rating decisions are often included in the administrative record in military pay cases before this Court" but argues that such cases are distinguishable from the present case because, in those cases, the "military correction boards considered the VA rating decisions in the first instance." Id. at 7.

The court concludes that supplementation of the administrative record with the VA rating decisions (and cover letter) is appropriate in this case.  Because this is a case in which the plaintiff has appealed a PEB decision directly to the court instead of to a military correction board, see id. at 7 n.1 ("Captain Joslyn did not seek relief before the Army Board for Correction of Military Records."); see also supra note 9 (stating that administrative remedies need not be exhausted for a PEB decision to be appealed to this court), no forum has had an opportunity to consider the VA rating decisions, cf. Brown, 184 Ct. Cl. at 510-11, 396 F.2d at 996 (stating that, under such circumstances, "there is no one to perform [the] function [of accepting de novo evidence] except the court" and stating that such a procedure is necessary because "it is sometimes impossible to diagnose accurately the existence, extent, or nature of a disability on the basis of the facts know at the time of separation").  Further, supplementation of the administrative record with the VA rating decisions (and cover letter) permits meaningful review because the VA rating decisions provide a point of comparison to the Army's determination of fitness and constitute new evidence that was not available below. Cf. Walls, 582 F.3d at 1368 (denying supplementation when evidence could have been offered to the military corrections board); Bateson, 48 Fed. Cl. at 165 (stating that the court may consider evidence outside the administrative record that was unavailable below).

Accordingly, plaintiff's AR Motion is GRANTED and the administrative record is supplemented with the additional VA evidence.

C.      Cross-Motions for Judgment on the Administrative Record

1.      Disability Pay Claim Under 10 U.S.C. § 1201

Captain Joslyn contends that he "is entitled to Judgment on the Administrative Record in his favor because substantial evidence shows that he was 'unfit to perform the duties of [his] office, grade, rank, or rating because of physical disability incurred while entitled to basic pay.'" Pl.'s Mot. 1-2 (quoting 10 U.S.C. § 1201).  In other words, Captain Joslyn contends that he was wrongfully denied disability retirement pay as a result of the Army's incorrectly finding him fit for duty.  Compl. ¶ 1; see id. ¶ 32; Pl.'s Mot. 20 ("[T]he Army's determination that [Captain] Joslyn was fit for duty is simply unsupported by substantial evidence; i.e., it is so implausible that it cannot be ascribed to a difference in view or the product of agency expertise." (emphasis omitted)), 21 (stating that "the determination by the PEB and PDA finding [Captain] Joslyn 'fit for duty' [was] contrary to the overwhelming evidence in the record, and must be reversed").  The government responds that "Captain Joslyn asks this Court to reweigh the evidence

considered by the PEB and overturn its finding of fitness," when the role of the court is limited "to determin[ing] whether the Army's decision was supported by substantial evidence." Def.'s Reply 1-2. Further, defendant argues that plaintiff has not shown that the Army acted arbitrarily and capriciously because Captain Joslyn has not alleged that the PEB overlooked or ignored evidence or otherwise failed to perform its duties. Id. at 2. Defendant is largely correct.

Generally, the standard employed by the court is whether the findings of fitness by the PEB and PDA were "arbitrary, capricious, contrary to law, or unsupported by substantial evidence." Chambers, 417 F.3d at 1227; Heisig, 719 F.2d at 1156; see Stephens, 174 Ct. Cl. at 371-72, 358 F.2d at 954. Where, as here, the administrative record has been supplemented with additional evidence not considered by the Army, see supra Part III.B (supplementing the administrative record with two VA rating decisions), the court considers both the record and the de novo evidence to determine whether the decision of the military disability evaluation board is supported by substantial evidence, see Beckham, 179 Ct. Cl. at 544, 375 F.2d at 785. A fit for duty determination is supported by substantial evidence so long as relevant evidence exists "that a reasonable mind might accept as adequate to support a conclusion." Jennings, 59 F.3d at 160; accord Bond, 47 Fed. Cl. at 663. A fit for duty determination may be found arbitrary and capricious if evidence was ignored or unreasonably construed or if the evaluating board neglected to perform its designated duties. Stephens, 174 Ct. Cl. at 373-74, 358 F.2d at 955.

a.      The Army's Determination Was Supported by Substantial Evidence

Captain Joslyn's argument, that "substantial evidence shows [that he] was unfit for duty," Pl.'s Mot. 22 (capitalization omitted), and that such evidence controverts "the evidence relied on by the Army," id. at 26 (capitalization omitted), misinterprets the substantial evidence standard. Because the court "will not substitute [its] judgment for the board's when reasonable minds could reach differing conclusions," Sanders, 594 F.2d at 813; accord Heisig, 719 F.2d at 1156-57, the question is not whether substantial evidence weighs against the Army's decision but whether substantial evidence supports it, see Heisig, 719 F.2d at 1157.

Here, there was substantial evidence "that a reasonable mind might accept as adequate to support a conclusion" that Captain Joslyn was fit for duty. Cf. Jennings, 59 F.3d at 160; accord Bond, 47 Fed. Cl. at 663. Both the informal and formal PEBs cited the commander's statement from Lt. Col. Baker describing Captain Joslyn's performance as "satisfactory," see AR 36-37 (commander's statement from Lt. Col. Baker), as well as Captain Joslyn's officer evaluation reports, see AR 41-49 (officer evaluation reports for

July 2004-June 2007[11]), in support of their finding that Captain Joslyn's "medical conditions of PTSD, degenerative disc disease and left knee pain did not prevent him from completing his military obligation or performing assigned duties," AR 28 (informal PEB proceedings, DA Form 199); see AR 17 (formal PEB proceedings, DA Form 199); cf. Def.'s App. DA 13 (Army Reg. 635-40 ¶ 3-1(c)) (stating that a cause and effect relationship must exist between "inadequate duty performance and the presence of physical disabilities").

Indeed, the court observes that, with one exception, all of the officer evaluation reports support a finding that Captain Joslyn was able to perform his duties in a satisfactory manner, see supra note 11 (describing content of officer evaluation reports), even though he suffered from chronic PTSD and lumbar degenerative disk disease with facet arthritis during the years covered by the reports, see AR 54 (MEB proceedings, DA Form 3947) (listing years in which medical conditions originated).  Moreover, Captain Joslyn described himself as "fully recovered" from the right knee injury described as the reason for his unsatisfactory officer evaluation report rating for June 2005-June 2006, see AR 45 (memorandum from Captain Joslyn regarding officer evaluation report), and the report was positive with regard to Captain Joslyn's performance in areas other than his physical fitness, see supra note 11; cf. Def.'s App. DA 13 (Army Reg. 635-40 ¶ 3-1(c)) (stating that a cause and effect relationship must exist between "inadequate duty performance and the presence of physical disabilities").  Although Captain Joslyn's left anterior knee pain, which the MEB determined originated in 2007, see AR 54 (MEB

---

[11] Captain Joslyn's officer evaluation report for June 2006-June 2007 rated his performance as "satisfactory," stated that he had "shown steady improvement in his second year" as an assistant ROTC instructor and recommended him for promotion to Major.  AR 42 (officer evaluation report for June 2006-June 2007).  His previous officer evaluation report for June 2005-June 2006 stated that Captain Joslyn had "performed well" and "done a[] good job," specifically mentioning his "attention to detail" and that his "planning and preparation serve[d] him well with staff meetings and briefings."  AR 44 (officer evaluation report for June 2005-June 2006).  Nevertheless, the report for June 2005-2006 rated his performance as "unsatisfactory," concluding that Captain Joslyn should not be promoted to Major at the time of the report because he had failed a two-mile run and needed to "make significant changes in his physical fitness level."  Id.  In a memorandum regarding his officer evaluation report, Captain Joslyn represented that his "unsatisfactory" rating for lack of fitness stemmed from an injury to his right knee and subsequent surgery but stated that, as of July 31, 2006, he had "fully recovered to maintain the standards and increase potential."  AR 45 (memorandum from Captain Joslyn regarding officer evaluation report).  Captain Joslyn's officer evaluation report for January 2005-June 2005 rated his performance as "outstanding," praising his "immeasurable" contributions to his brigade as assistant brigade intelligence officer, describing him as "in the top 30% of all intelligence officers" rated by his commander, and stating "[s]elect for promotion to Major," with a rating of "best qualified."  AR 47 (officer evaluation report for January 2005-June 2005) (capitalization omitted).  An officer evaluation report for July 2004-December 2004 similarly described Captain Joslyn's performance as "outstanding" and described his as "an exceptional Military Intelligence officer."  See AR 49 (officer evaluation report for July 2004-December 2004).

proceedings, DA Form 3947), may not have been an issue during the time covered by the officer evaluation reports, neither Lt. Col. Baker's commander's statement of March 10, 2008, see AR 36-37 (commander's statement from Lt. Col. Baker), nor Major Diaz's memorandums from July 2, 2008, see AR 12-14 (cover memorandum and commander's statement from Major Diaz), mention this particular condition as interfering with Captain Joslyn's performance of his duties.

Further, the formal PEB considered testimony of Captain Joslyn and noted that it was only during "his out-processing physical [that] he discussed all of his physical complaints with the provider who then recommended [an MEB]." AR 17 (formal PEB proceedings, DA Form 199); Pl.'s App. 1 (DA Form 199-1) (same); cf. Def.'s App. DA 13 (Army Reg. 635-40 ¶ 3-1(c)) (stating that, given evidence that a soldier "adequately performed the normal duties of his . . . office, grade, rank, or rating until the time of referral for physical evaluation, the Soldier might be considered fit for duty . . . even though medical evidence indicates" that the soldier's ability to perform his duties "may be questionable").

Plaintiff argues, however, that the commander's statement from Lt. Col. Baker "is not probative" because "but for [Captain Joslyn's] resignation, he would have received a negative" officer evaluation report, and the statement "confirmed that [Captain] Joslyn could only perform the simplest of tasks." Pl.'s Mot. at 26-27 (emphasis omitted). Plaintiff also argues that "the progression" of his officer evaluation reports from 2004-2007 "show[s] a steady decline in his performance and abilities." Id. at 28. Additionally, plaintiff contends that the Army evaluated his fitness for duty under the wrong standard, that is, under the standard for military intelligence officers instead of under the standard for infantry officers. See Pl.'s App. 1 (DA Form 199-1).

Defendant responds that "Captain Joslyn offers no corroborating evidence to support his allegation that Lt. Col. Baker misrepresented Captain Joslyn's military service" and that "his allegation of a quid pro quo arrangement with Lt. Col. Baker . . . cannot overcome the presumption that Lt. Col. Baker wrote the . . . officer evaluation reports in good faith." Def.'s Reply 12 (citing Hoffman v. United States, 894 F.2d 380, 385 (Fed. Cir. 1990)); cf. Pl.'s Mot. 26-27 (stating that "Lt. Col. Baker provided a positive [officer evaluation report] on the contingency that [Captain] Joslyn submit his resignation"). Further, defendant contends that the officer evaluation reports for July 2004 through June 2007 do "not demonstrate a steady decline" when, "in fact, Captain Joslyn's performance rating increased during his last rating period before his discharge." Def.'s Reply 15 (citing AR 41-42 (officer evaluation report for June 2006-June 2007)). Defendant also contends that Captain Joslyn's argument that the PEB incorrectly evaluated him as a military intelligence officer instead of as an infantry officer is without merit because "Captain Joslyn's military records identify him as [a military intelligence] officer, all of his officer evaluation reports identify him as [a military intelligence] officer, and his resignation request and request to withdraw his resignation request

indicate that he is [a military intelligence] officer." Id. at 20 n.7 (internal citations omitted).

Defendant is correct. The court observes that Captain Joslyn's officer evaluation report for June 2006-June 2007 described his performance as "satisfactory," an improvement from his previous "unsatisfactory" rating, cf. supra note 11 (describing content of officer evaluation reports, which progressed from "outstanding" to "unsatisfactory" to "satisfactory" from 2004 to 2007), and is consistent with Lt. Col. Baker's description of Captain Joslyn's performance as "satisfactory" in his March 10, 2008 commander's statement, see AR 36 (commander's statement from Lt. Col. Baker). Moreover, the court observes that Captain Joslyn's argument that his "Commanding Officer failed to accurately depict [his] duty performance," see Pl.'s App. 1 (DA Form 199-1), was considered by the PDA along with Captain Joslyn's other rebuttal materials but found unpersuasive, see AR 7 (chronological MEB case status) (stating that Captain Joslyn's rebuttal materials were received and considered with "no change to findings"). In addition, the court finds that the administrative record indicates that Captain Joslyn was a military intelligence officer from July 2004 until his discharge, cf. AR 3 (withdrawal request), 41-49 (officer evaluation reports for July 2004-June 2007), 132 (officer record), 154-55 (resignation) (identifying Captain Joslyn as a military intelligence officer), and, therefore, that the Army did not err in evaluating his fitness for duty under the standards appropriate for a military intelligence officer. Accordingly, the court cannot conclude that the Army's reliance on this evidence overlooked relevant factors or constituted a clear error of judgment. Cf. Overton Park, 401 U.S. at 416.

Plaintiff's contention that the evidence relied upon by the Army is "significantly outweighed by substantial medical and military personnel evidence[12] demonstrating that [Captain] Joslyn could not perform the duties expected of his grade and rank," Pl.'s Mot. 26 (footnote added) (emphasis omitted), seeks a reweighing of the evidence by the court, cf. Heisig, 719 F.2d at 1157 (stating that "the standard of review does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence" (emphasis omitted)). The court shall not substitute its judgment for that of a PEB or the PDA. Cf. id. at 1156-57; Sanders, 594 F.2d at 813. However, if the administrative record has been supplemented with new evidence not considered by the Army, as it has in this case with the VA rating decisions, see supra Part III.B, the court will consider de novo evidence in addition to the record to determine

---

[12] Specifically, plaintiff contends that (1) the MEB findings and "[o]ther medical evidence . . . demonstrated that [Captain] Joslyn suffered from severe impairments and required frequent medical care and medication[,] i.e.[,] [Captain] Joslyn was 'unfit' for military duty," Pl.'s Mot. 22-23; (2) "comments by [Captain] Joslyn's command indicated that he was unfit for duty," in particular, one comment in response to his request to withdraw his resignation and comments in the memorandums written by Major Diaz, see id. at 24; and (3) the VA disability rating decisions "are informative and persuasive of unfitness," id.

whether the Army's determination of fitness was supported by substantial evidence, cf. Beckham, 179 Ct. Cl. at 544, 375 F.2d at 785.

Plaintiff concedes that "neither a court nor a military branch is bound by a decision of the [VA], which operates under different laws and standards and for different purposes than the military when it comes to disability entitlements." Pl.'s Mot. 25 (citing Banerjee, 77 Fed. Cl. at 537). Nevertheless, plaintiff argues that the VA rating decisions that supplement the administrative record in this case "lend significant credence to Captain Joslyn's arguments that the Army . . . reached a conclusion unsupported (indeed contradicted) by substantial evidence." Pl.'s AR Mot. 2-3. In support of this position, plaintiff states that "the VA concluded that [Captain] Joslyn was so disabled based on service-connected disabilities that he could not sustain a substantially gainful occupation" at "around the same time" that "the Army concluded that [Captain] Joslyn was 'fit for duty.'" Pl.'s Mot. 25 (emphasis omitted); cf. Pl.'s App. 8-18 (first rating decision); id. at 2-7 (second rating decision).

Defendant responds that "the VA's decision only addresses the extent to which Captain Joslyn is employable in the civilian world, not his fitness for duty in the Army." Def.'s Reply 11 (citing Haskins, 51 Fed. Cl. at 826). Defendant notes that plaintiff relies on the second rating decision, which became effective "more than a year after the PEB's fitness determination," in support of plaintiff's assertion that he was unemployable as a result of his disabilities, see id. (citing Pl.'s App. 4-5 (second rating decision)), and states that the first rating decision did not conclude that Captain Joslyn was unemployable, see id. (citing Pl.'s App. 8-18 (first rating decision)). Defendant also notes that, unlike a PEB determination, which it describes as a "snapshot," VA ratings are "evaluate[d] and adjust[ed] . . . throughout the individual's lifetime." Id. (citing Stine v. United States, 92 Fed. Cl. 776, 795 (2010)).

The court concludes that the VA rating decisions, considered with the administrative record, fail to establish that the Army's finding of fitness was not supported by substantial evidence. With respect to the three medically unacceptable conditions found by the MEB (chronic PTSD, lumbar degenerative disc disease with facet arthritis, and left anterior knee pain), see AR 54 (MEB proceedings, DA Form 3947), the VA assigned the following disability ratings on May 13, 2009: (1) PTSD (combined with major depressive disorder), 30%; (2) lumbar degenerative disc disease, 10%; (3) left knee pain, 10%, Pl.'s App. 8-9 (first rating decision). Had Captain Joslyn been found unfit by the PEB, only one of these disabilities (major depressive disorder combined with PTSD) would have met the requirements for disability pay, based on the VA ratings. Cf. 10 U.S.C. § 1201(b) (providing that a soldier who has served fewer than twenty years is not entitled to retirement compensation unless he has suffered a permanent, service-connected disability that is rated "at least 30 percent under the standard schedule of rating disabilities in use by the [VA]" and he is found unfit for duty); Def.'s App. DA 24 (Army Reg. 635-40 ¶ 4-19(f)(4)) (stating that, "[w]hen a

28

finding of unfitness depends on the combined effect of two or more disabilities, each disability must meet the . . . eligibility requirements"). Further, the court observes that the VA rating of 30% was characterized as a rating for "major depressive disorder <u>with</u> post traumatic stress disorder." <u>See</u> Pl.'s App. 8 (first rating decision) (emphasis added). Because the MEB did not include "major depressive disorder" in its finding of PTSD, it is unclear whether the disability rated by the VA at 30% would be analogous to the MEB's finding of a disability of PTSD. <u>See</u> AR 54 (MEB proceedings, DA Form 3947) (diagnosing Captain Joslyn with "Chronic [PTSD]" and identifying chronic PTSD as a "Medically unacceptable" condition). And even if it were, the VA rating decisions, which pertain to ability to perform in the civilian world, <u>see</u> <u>Haskins</u>, 51 Fed. Cl. at 826, are not binding on either the Army or the court in determining whether a soldier is fit for duty, <u>cf.</u> <u>Rutherford v. United States</u>, 216 Ct. Cl. 163, 170, 573 F.2d 1224, 1227 (1978); <u>Banerjee</u>, 77 Fed. Cl. at 537.

The VA issued a second rating decision following Captain Joslyn's July 2009 request for an "increase in [his] service connected compensation," <u>see</u> Pl.'s App. 2 (second rating decision), increasing Captain Joslyn's rating for major depressive disorder with PTSD to 50% and deeming him entitled to "individual unemployability" compensation, <u>id.</u> at 4. The second rating decision stated that both depression and PTSD "are likely contributory to [Captain Joslyn's] unemployability," and named depression-related "difficulties with attention and concentration, anhedonia, and motivation" as "likely . . . the primary source of [his] sustained occupational impairment," and "quite significant" "mood symptoms" as another likely source of his "social and occupational impairment." <u>Id.</u> at 5.

Although evidence in the record suggests that Captain Joslyn suffered from depression prior to his discharge, <u>see</u> AR 249 (December 18, 2008 evaluation form completed by Dr. Trotsky) (diagnosing Captain Joslyn with depression and cognitive disorder), depression was not a disability before the PEB or PDA, <u>see</u> AR 54 (MEB proceedings, DA Form 3947) (listing medically unacceptable conditions); <u>see also</u> AR 55 (certification by Captain Joslyn) (certifying that the MEB "accurately cover[ed] all of [his] medical conditions"). To the extent that the court can discern, Captain Joslyn's depression has likely worsened since his discharge. <u>Cf.</u> Pl.'s App. 2, 4 (second rating decision) (increasing Captain Joslyn's rating with respect to major depressive disorder with PTSD and describing depression-related difficulties as the likely primary source of his unemployability). However, this circumstance, as reflected in the VA rating decisions, and its implications for Captain Joslyn's civilian career and social and personal life are not sufficient to show that the Army's finding of fitness for duty in August 2008, <u>see</u> AR 7 (chronological MEB case status), was unsupported by substantial evidence.

The court concludes that, at both the PEB and PDA tiers, there existed relevant evidence "that a reasonable mind might accept as adequate to support a conclusion" that

Captain Joslyn was fit for duty--that is, that the Army's determination was supported by substantial evidence.  Cf. Jennings, 59 F.3d at 160; accord Bond, 47 Fed. Cl. at 663.

> b.      The Army's Determination Was Not Arbitrary or Capricious

To show that the PEB or PDA acted arbitrarily or capriciously, Captain Joslyn must demonstrate that evidence was ignored or unreasonably construed or that designated duties were not performed by the board.  Cf. Stephens, 174 Ct. Cl. at 373-74, 358 F.2d at 955.  Plaintiff appears to argue that evidence was unreasonably construed because the Army's finding of fitness was "contrary [to] the overwhelming evidence in the record," and that evidence, namely, "the simple fact that PTSD may onset at any time," was ignored.  Pl.'s Mot. 20-21.  Defendant responds that plaintiff has not shown that the Army acted arbitrarily or capriciously because Captain Joslyn has not alleged that the PEB overlooked or ignored evidence or otherwise failed to perform its duties.  Def.'s Reply 2; see also id. at 4 (stating that the medical evaluations considered by the Army "establish that Captain Joslyn had medical conditions" but "do not establish that the PEB's fitness determination was arbitrary or capricious").

As discussed in Part III.C.1.a, the court concluded that the PEB and PDA reasonably construed the evidence before them.  Further, plaintiff has not presented any evidence showing that the PEB overlooked or ignored Captain Joslyn's PTSD diagnosis.  Instead, as defendant observes, see Def.'s Reply 15, the PEB specifically acknowledged that Captain Joslyn suffered from "PTSD, lumbar degenerative disc disease and left knee pain" but concluded that, based on Lt. Col. Baker's March 10, 2008 commander's statement and Captain Joslyn's officer evaluation reports for July 2004-June 2007, these conditions "did not prevent him from completing his military obligation or performing assigned duties," AR 17 (formal PEB proceedings, DA Form 199).

The court can find no evidence properly before the PEB or PDA that was overlooked or ignored.  Cf. id. (stating that the formal PEB "reevaluated all available medical records and sworn testimony by the Soldier"); AR 7 (chronological MEB case status) (stating that the rebuttal materials were received and considered).  Captain Joslyn availed himself of review of the initial informal PEB findings by a formal PEB, at which he made a personal appearance and was represented by counsel of his choice, and--even though he failed timely to submit his materials in rebuttal of the formal PEB findings--his rebuttal and additional evidence in the form of the memorandums from Major Diaz was considered by the PDA.  See supra Part I.B; cf. Heisig, 719 F.2d at 1157 (finding that the plaintiff's application cannot be said to have "received less than adequate consideration" when it was "considered and reconsidered at every level," there was "no indication that the board ignored the governing regulations" and substantial evidence supported its finding (internal quotation marks omitted)).  In addition, this court has considered the new evidence offered by plaintiff, the VA rating decisions, and has determined that they do not provide a basis for overturning the Army's fitness determination.  See supra Part III.C.1.a.

Because plaintiff has failed to demonstrate that the Army ignored or unreasonably construed evidence or that the PEB or PDA failed to perform designated duties, the court concludes that the Army's determination that Captain Joslyn was fit for duty was not arbitrary or capricious.  Cf. Stephens, 174 Ct. Cl. at 373-74, 358 F.2d at 955.  Accordingly, the Army's determination of fitness shall not be disturbed, and the court holds that Captain Joslyn is not entitled to retirement pay under 10 U.S.C. § 1201.  Cf. 10 U.S.C. § 1201(a)-(b) (providing that a soldier who has served for fewer than 20 years must be found unfit for duty, among other requirements, to be entitled to disability pay).

2.      Wrongful Discharge Claim Under the Military Pay Act, 37 U.S.C. § 204

Captain Joslyn alleges that he is entitled to compensation under the Military Pay Act because his resignation from the Army "was not voluntary, but was rather the result of undue command duress and coercion, and mental illness."  Pl.'s Mot. 29.  More specifically, Captain Joslyn alleges that "Lt. Col. Baker threatened [his] reputation and employment" and that "[h]is mental illnesses prevented him from discerning any alternative to accepting Lt. Col. Baker's ultimatum and from understanding his rights for disability retirement . . . and the import of his resignation."  Id. at 30-31; see also Pl.'s Reply 7 ("[S]ubstantial medical evidence regarding Captain Joslyn's severe PTSD and major depressive disorder, in combination with command duress, precluded Captain Joslyn from understanding the import and consequence of his resignation.").

Defendant responds that "Captain Joslyn's allegation that his commander threatened a negative officer evaluation report unless Captain Joslyn resigned does not overcome the presumption that his resignation was voluntary."  Def.'s Reply 21.  Further, defendant argues that plaintiff's Complaint failed to allege mental incompetence, and that "[t]here is no support in the administrative record for the conclusion that Captain Joslyn was mentally incompetent.  Rather, there is ample evidence to the contrary."  Id. at 21-22.  In addition, defendant asserts that "the Army followed applicable procedures in processing [Captain] Joslyn's request to withdraw his resignation request" and acted within its discretion in denying the request.  Id. at 23-24.

To prevail on his wrongful discharge claim, Captain Joslyn must meet the burden of establishing that his separation from the military was involuntary, cf. Metz, 466 F.3d at 998, that is, that he did not "exercise[] a free choice in making the resignation . . . decision," see McIntyre, 30 Fed. Cl. at 211.  Notably, plaintiff does not plead that his resignation was involuntary, only that the Army's denial of his request to withdraw his resignation was "arbitrary, capricious, an abuse of discretion, or otherwise contrary to law."  See Compl. ¶¶ 14-15 (discussing submission of resignation), 27-28 (discussing request to withdraw), 38-39 (claim for relief based on 37 U.S.C. § 204).  Nevertheless, courts have held that the presumption that a military resignation is voluntary, see Tippett, 185 F.3d at 1255, may be rebutted when a soldier is mentally incompetent, resigns under duress or unsuccessfully tries to withdraw his resignation, as well as in a few other

circumstances not alleged here, cf. Scharf, 710 F.2d at 1574.  Because plaintiff alleges mental incompetence and duress, see Pl.'s Mot. 29, and tried to withdraw his resignation, see AR 3 (withdrawal request), the court considers whether plaintiff has successfully rebutted the presumption of voluntariness.

The court concludes that plaintiff has not alleged sufficient evidence of mental incompetence to rebut the presumption of voluntariness.  As defendant observes, see Def.'s Reply 21-22, plaintiff does not allege mental incompetence or lack of understanding in the Complaint, and the administrative record does not support such a finding, cf. AR 122 (Dec. 12, 2007 record of examination by psychiatrist Dr. Adams) (stating that "Captain Joslyn is capable [of] participating in the MEB proceedings"); AR 154-55 (resignation) (stating "I understand that my resignation is voluntary and that I am not entitled to severance pay," signed by Captain Joslyn); see also AR 149 (statement of counseling from Colonel James M. House) (affirming that Captain Joslyn had been counseled in accordance with Army regulations about his resignation, including with respect to the benefits of a military career and how his investment of time in the Army "should be weighed heavily on any decision to submit an unqualified resignation"); AR 153 (statement of counseling from Lt. Col. Baker) (affirming that Captain Joslyn had been counseled in accordance with Army regulations).  The portions of the administrative record cited by plaintiff in support of its argument that Captain Joslyn did not understand or appreciate the consequences of his resignation are not persuasive.  See Pl.'s Mot. 31-32 (citing AR 63, 427-28, 559 (medical records)).[13]  Further, the court is persuaded by

_____

[13] Page 63 is a physical therapy record that does not support plaintiff's position because it makes no mention of his mental state.  See AR 63.

Pages 427-28 are part of a record from a neurological exam conducted on October 1, 2008.  See AR 427-28.  On page 427, the provider noted "[m]emory lapses or loss," "headaches several times a [week]" and "cognitive deficits."  Id. at 427.  However, the provider also noted that Captain Joslyn was alert and oriented and understood and agreed with the treatment plan.  Id.  The record further noted that Captain Joslyn's headaches "appear[ed] to be more chronic daily headaches from medication overuse."  Id.  Page 428 of the record, which plaintiff cites as evidence of "memory impairment, inability to spell or multi-task," Pl.'s Reply 31, appears to record Captain Joslyn's own description of his conditions at the time that he requested his appointment, and evidence of these conditions is reflected in the doctor's notes on page 427, compare AR 427 (provider's notes), with id. at 428 (recording conditions in narrative under "Reason for Request" heading).  However, plaintiff's description fails to establish incompetence, particularly given the provider's comments to the contrary.

Page 559 is part of a record of a psychiatry examination conducted on July 30, 2008.  See AR 559.  Although plaintiff is correct that the record shows that he suffered from depression and poor concentration, cf. id., the psychiatrist also noted in the same record that plaintiff's judgment and thought processes were not impaired and that his insight was intact, see id. at 560.  This record also fails to establish plaintiff's incompetence and, indeed, weighs in favor of a finding of competence.

additional evidence cited by defendant in support of its position that Captain Joslyn was competent to submit his resignation and understand the consequences. See Def.'s Reply 22-23. In particular, the court is persuaded that Captain Joslyn's position as an assistant professor of military science, see AR 155 (resignation) (listing "Assistant Professor of Military Science" as Captain Joslyn's title), his rebuttal to the PEB findings (including analysis of Army regulations), see Pl.'s App. 1 (DA Form 199-1), and his expressed desire to withdraw his resignation in order to participate in the Critical Skills Retention Program, see AR 3 (withdrawal request), all evidence mental competence, cf. Def.'s Reply 22. Defendant also points to numerous medical records indicating Captain Joslyn's competence, see id. 22-23 (citing AR 253, 265, 288, 296, 323, 365, 371, 375 (medical records)), which the court finds persuasive.

Plaintiff also has not alleged sufficient evidence of duress to overcome the presumption of voluntariness. Plaintiff's assertion that "Lt. Col. Baker threatened [his] reputation and employment" by informing him "that he would receive a negative [officer evaluation report] if he did not submit his resignation," Pl.'s Mot. 30, is insufficient to establish coercion or a lack of alternatives. In fact, Captain Joslyn alleges that Lt. Col. Baker offered him a choice of two alternative options--resign or receive a negative officer evaluation report. Cf. Sammt, 780 F.2d at 32 (stating that a resignation "is not rendered involuntary by the imminent imposition of a less desirable alternative"); Scarseth, 52 Fed. Cl. at 474 (similar). In addition, Captain Joslyn's rebuttal characterized Lt. Col. Baker's role in his resignation: "My commanding officer express[ed] concern with my retainability and encouraged me to submit my resignation," Pl.'s App. 1 (DA Form 199-1), which does not indicate coercion.

Further, to the extent that plaintiff's request to withdraw his resignation may overcome the presumption of voluntariness, cf. Scharf, 710 F.2d at 1574, the record contains sufficient evidence to establish that plaintiff's resignation was indeed voluntary and, as discussed above, plaintiff has failed to present sufficient evidence to the contrary. Specifically, Captain Joslyn signed his tender of resignation stating "I understand that my resignation is voluntary and that I am not entitled to severance pay," AR 155 (resignation), and received counseling on his decision to resign, AR 149 (statement of counseling from Colonel James M. House) (affirming that Captain Joslyn had been counseled in accordance with Army regulations about his resignation, including with respect to the benefits of a military career and how his investment of time in the Army "should be weighed heavily on any decision to submit an unqualified resignation"); AR 153 (statement of counseling from Lt. Col. Baker) (affirming that Captain Joslyn had been counseled in accordance with Army regulations). Further, Captain Joslyn's request to withdraw his resignation states that he wishes to do so for the sole reason of participating in the Critical Skills Retention Bonus Program, see AR 3 (withdrawal request), which provides no basis for concluding that the original resignation request was involuntary. Accordingly, the court concludes that Captain Joslyn's resignation request was voluntary.

With respect to the Army's denial of plaintiff's request to withdraw his resignation, the Army has wide discretion to accept or reject a request to withdraw a resignation, see Cole, 231 Ct. Cl. at 704, 689 F.2d at 1041, and the Army's decision "must be granted substantial deference," Brown, 30 Fed. Cl. at 231.  Captain Joslyn stated as the reason for his request that he wanted to participate in the Critical Skills Retention Bonus Program.  See AR 3 (withdrawal request).  However, both of Captain Joslyn's commanders opposed his participation in the program:  one expressed concern that Captain Joslyn could not accomplish the tasks required by the program and the other cited Captain Joslyn's consideration for an adverse action under the Uniform Code of Military Justice.  See id.  As a result, the Army "determined that the reasons presented [by Captain Joslyn for his request] did not justify approval."  AR 1 (memorandum denying withdrawal request).  In denying plaintiff's request, the Army stated that the request had been "reviewed as an exception to policy."  Id.  Based on the evidence in the record, the court cannot conclude that the Army abused its discretion in denying plaintiff's request.  Cf. Cole, 231 Ct. Cl. at 704, 689 F.2d at 1041.

The court, therefore, holds that, because plaintiff's resignation was not involuntary and because the Army did not abuse its discretion in denying plaintiff's request to withdraw his resignation, plaintiff is not entitled to relief for wrongful discharge.  Cf. Metz, 466 F.3d at 998 (stating that to prevail on a wrongful discharge claim, a plaintiff must meet the burden of establishing that his separation from the military was involuntary).

IV.    Conclusion

For the foregoing reasons, the court holds that the relevant evidence does not support plaintiff's claim under either 10 U.S.C. § 1201 or 37 U.S.C. § 204.  Defendant's Motion is GRANTED-IN-PART and DENIED-IN-PART AS MOOT, and plaintiff's Motion is DENIED.  The Clerk of Court shall ENTER JUDGMENT in favor of defendant.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Chief Judge